OPINION AND ORDER
GARY P. SULLIVAN, Chief Justice.

BRIEF FACTUAL OVERVIEW AND PROCEDURAL HISTORY

Hazel Cantrell and James A. Boyd were married on August 20, 1988, in Wolf Point,
*211 MT. Hazel filed for Dissolution of Marriage on June 28, 1999, requesting, among other things, that she be awarded the 1975 Broadmore Trailer and that James be awarded, among other things, the HUD home, commonly known as 909 Ash Street, Wolf Point, MT. The marriage was dissolved on August 23, 1999. Following the dissolution, the parties, through their respective counsel, negotiated a marital property agreement. On or about October 7, 1999, Leighton Reum [1], submitted proposed findings of fact and conclusions of law on behalf of appellant. A proposed division of the marital assets was included in the body of the document. On October 12, 1999, Gerald T. Archambeault[2], Esq., Glasgow, MT., submitted proposed findings of fact and conclusions of law on behalf of appellee. Archambeault’s proposed order referred to an “Exhibit E” which purportedly divided the marital estate, however we could find no such exhibit in the lower Court record. On October 26, 1999, the Tribal Court issued an Order making a preliminary distribution of the marital estate. Included in this order was the following language:
“IT IS FURTHER ORDERED that the parties shall submit written argument and supporting affidavits if they so desire to this Court on or before November 12, 1999. Thereafter, this Court will enter its Final Order determining the division of marital property of the parties.”
Both parties submitted written arguments on November 12, 1999. Appellant also submitted a written statement and a letter from John G. Jones, Ph.D., a licensed psychologist. Appellee submitted various affidavits.
As best as can be determined from the lower Court record and substantiated by counsel during oral argument, the primary difference in the proposals for the division of marital property relates to the 1975 Broadmore Trailer and the HUD home commonly referred to as 909 Ash Street, Wolf Point, MT. The Broadmore trailer was located on the same lot as the HUD home.
On December 10, 1999, Archambeault submitted, in his words[3], a “somewhat revised (order)”. While this proposed order does not appear in our copy of the lower Court file, there appears to be no dispute between the parties that the December' 10 proposed order submitted by Archam-beault was ultimately signed by Judge Youpee and became the final Order appealed from, which is dated December 27, 1999. That Order awards the Broadmore Trailer' to appellant and the HUD property to appellee. While this division was in accordance with appellant’s original petition, sometime between filing her petition (June 28, 1999) and the filing of her proposed Order, she changed her request from the Broadmore Trailer to the HUD home. Thus, which party was to get which *212 of the living quarters became the cause célebre of this action.
On January 10, 2000, Hazel filed a Petition for Review with this Court and a Motion for Stay of Judgment. On January 21, 2000, Hazel filed another ‘motion for stay’, this time entitling it “Motion for Stay Pending Appeal”. The latter Motion for Stay was granted by Judge Youpee on the same day. This Court granted Hazel’s request for review on February 9, 2000 and set a briefing schedule wherein the appellant was to file her brief on or before February 28, 2000, and the appellee was to file his brief on or before March 17, 2000. Appellant failed to file a brief or, alternatively, a notice of her intent to stand on the record. This Court then filed an Order to Show Cause Why Appeal Should Not be Dismissed on April 6, 2000, and scheduled a hearing for April 21, 2000 at 2:00 p.m. After noting that April 21, 2000 was Good Friday, this Court vacated the heai'ing date and re-set the matter for hearing on May 5, 2000 at 1:45 p.m. At the commencement of that hearing, appellant’s attorney, Clayton Reum, requested a ‘closed heai'ing’, alleging that he needed to discuss a sensitive matter. Hearing no objection, we reluctantly granted a closed heai'ing which was attended by both counsel. While the ‘sensitive matter’ discussed had no direct bearing on this case, we proceeded to allow appellant’s request that she be allowed to stand on the record and set the matter for oral argument on May 19, 2000, at 2:00 p.m. Due to a clerical error by this Court, the matter was not properly docketed for May 19th and with our apologies to the litigants, we re-set the oral argument for June 9, 2000 at 3:00 p.m. Following the oral argument, the matter was submitted.

ISSUES PRESENTED

Appellant contends that 1) the Tribal Court failed to make an equitable division of the marital property in accordance with the parties’ agreement, 2) Judge Youpee was ‘closely related’ to appellee and appel-lee’s son Wayne Boyd, who was ‘scheduled to testify’, and 3) an additional proposed order was submitted to the Court after November 12, 1999, and that appellant was not granted an opportunity to answer or re-submit new (proposed) findings and conclusions of law, as a result of “this one sided action”.

STANDARD OF REVIEW

“The jurisdiction of the Court of Appeals shall extend to all appeals from final orders and judgment of the Tribal Court. The Court of Appeals shall review de novo all determinations of the Tribal Court on matters of law, but shall not set aside any factual determinations of the Tribal Court if such determinations are supported by substantial evidence”. Title I Ft Peck CCOJ § 201. The issues presented in this appeal involve both questions of fact and law. As set forth in § 201 above, we apply the “substantial evidence” rule in reviewing questions of fact and we review “de novo” the questions of law.

DISCUSSION

The ‘equitable division’ issue. Hazel contends that the Tribal Court failed to make an equitable division of the marital estate in accordance with the parties’ agreement. The only document appearing in our record that appears to have the accord of the parties, is “Exhibit B”, attached to James’ October 12th proposed order, which is entitled “Respondent’s List of Post Marital Property”. This document appears to set forth the marital estate with corresponding values. There are no signatures. Curiously, the only human ac-knowledgement on this document are the initials, ostensibly of the attorneys, on *213 three of the line items wherein the typed values of two of the items were lined out and new values were written in by hand. While the typed total was lined out to acknowledge the changes, no new total was written in. The new total, after factoring in the changes, is $54,031.33. This document is specifically referred to in the December 27th order and is represented as “(t)he assets and debts” of the marital estate (see Tribal Court Order, dated 12/27/99, lines 5-6, page 2). Further, in paragraph 7 of the Order, the Court sets forth, item for item, along with corresponding values, which assets will be distributed to the parties. Hazel’s total is $28, 057.93. James’ total is $25,973.40. The combined total is $54,031.33, which matches the new total of the aforementioned document. Thus, we conclude that the parties probably did agree on the composition and total value of the marital estate, however, we could find no evidence of ‘an agreement’ regarding the actual division of the property.
In its December 27th Order, the Tribal Court, in making the apportionment of the estate, considered: 1) the duration of the marriage, 2) prior marriage of either party, 3) age of the parties, 4) health of the parties, 5) prior station in life, 6) occupation, 7) amount and sources of income, 8) vocation skills, 9) employability, 10) the totality of the marital estate, 11) liabilities of the parties, 12) opportunity for future assets and income, and 13) prior agreements of the parties. As previously noted, Hazel’s portion was $28,057.93 and James’ portion $25,973.40. Thus, Hazel received $2,084.53 more than James. Regarding ‘prior agreements’ (item 13), the Court stated, “Petitioner had previously asked this Court for the Broadmore Trailer with Respondent receiving the HUD home and furniture.” (See id. Para 6n, line 26, page 3 through line 1, page 4). We do not know whether the Court was making reference to Hazel’s original petition, wherein she requested the Broadmore Trailer, or whether she ‘asked’ for the Broadmore Trailer on another occasion. It is clear, however, that Hazel’s October 7th proposed Order requested the opposite division (i.e. HUD home to her with the Broadmore Trailer to James). Whether she subsequently changed her mind again after the October 7th order and requested that the Court grant her the Broadmore Trailer is not so clear.
Nonetheless, we find no fault with the Court’s division of the property. There is substantial evidence to support the division that was made by the Court. We find no agreement between the parties regarding the division of the marital estate anywhere in the record.
The issue of the relationship of the Judge to one of the parties. Hazel’s counsel maintains that Judge Youpee is “related very closely to James A. Boyd and his son, Wayne Boyd, who was scheduled to be a witness in this matter”. He further contends that, as a result of this relationship, Judge Youpee should have recused himself, or “at least allowed the opposing party to challenge this issue”. Regrettably, counsel fails to state any details concerning this relationship and offers no evidence whatsoever that such relationship, if any there be, would have biased Judge Youpee. On the other hand, James’ counsel does offer details regarding this relationship: “The respondent’s son, Wayne Boyd is married to Dolly Red Boy. Dolly Red Boy’s mother is (or was) married to Jimmy Youpee. Jimmy Youpee is a blood relation of Judge Youpee, being a cousin of first or second degree. In others words, petitioner’s counsel’s definition of ‘related very closely’ includes the respondent being the father of the Judge’s cousin’s wife’s son-in-law.” (see Response to *214 Petition for Review, lines 4-9, page 4). James’ counsel goes on the add, “In a small town such as Wolf Point, some remote relationship between the Judge and the parties could always be found, and could be used after the fact as a basis for appeal by whichever party was unhappy with the outcome of the case.” We agree.
Hazel offers no authority to support her position. Title II CCOJ § 307[4] sets forth the guidelines for disqualification of a Judge. That section refers to “immediate family” in a slightly different context, however, we note that the definition is useful here: “... As used in this Section, immediate family shall include spouses, grandparents, parents, children, grandchildren, brothers, sisters and in-laws. ” (our emphasis) The characterization of the ‘relationship’ of Judge Youpee and James Boyd as “very closely related” is, as James’ counsel points out, “laughable”. As previously noted, in small communities, people are far more likely to be ‘connected’ in some way to one another. To suggest that, in small communities, such a remote ‘connection’ would automatically require Judges to re-cuse themselves, is wholly without merit. With such a requirement, those folks who previously thought that the ‘wheels of justice turn slowly’ would soon see those same wheels come to a ‘dead stand still’.
Denial of due process. Hazel’s final issue is equally without merit. She states that, “. .. the record in this matter was closed on or about the 12th day of November, 1999 and that nothing further could be submitted for consideration by either party.” We agree with Hazel up to this point. The record was apparently closed on November 12th. She goes on to add, “On or about the 27th day of December, 1999, opposing counsel submitted an additional proposed order which is contrary to the understanding of the parties and the Court.” The proper remedy for any litigant under these circumstances is to lodge an immediate objection. We have previously noted that James’ proposed Order of December 10 could not be found in the record. Therefore, we cannot determine whether the Judge saw that Order or not. Assuming that he not only saw the Order, but used it as a basis for the final Order, we find that Hazel’s failure to object waives any defect or error that might have resulted. Further, Hazel offers no proof that the proposed Order submitted by James’ counsel on December 10th (misstated by Hazel to be December 27th) was “contrary to the understanding of the parties and the Court”. If the parties and/or the Court “understood” anything at all, it would appear in the record and we have already noted that the record is void of any agreement, save the initialed listing of the marital estate referred to above.
Hazel concludes her allegation regarding denial of due process by stating, “Petitioner and counsel were not given an opportunity to answer or resubmit new findings, conclusions and proposed order as a result of this one sided action.” At oral argument, Hazel’s counsel was asked why he failed to respond to the December 10th proposed Order. He stated that he had been ill and that he was not functioning well overall. Thus, it was counsel’s admitted dysfunction that allegedly prevented *215 him from answering with an objection, or otherwise responding with his own proposed Order. While we are generally sympathetic and do not wish to place heavy burdens upon those who freely admit periods of dysfunction, we note that in this matter all that was required was a letter of objection to the Judge. That alone would have protected Hazel’s right. Even so, we fail to see how the proposed Order adversely affected Hazel. She received more than a fifty percent share of the marital estate. In the absence of more detailed allegations regarding prejudice to Hazel, given the fact that the Tribal Court actually used the December 10th proposed Order for its own final order, we find only harmless error resulted.
The Order appealed from is affirmed. All Tribal Court orders heretofore stayed or not acted upon because of, or pursuant to, the pendency of this Appeal, are herewith restored and shall be given full force and effect without further delay.
CONCUR: GARY M. BEAUDRY and CARROLL J. DeCOTEAU, Associate Justices.

. Leighton Reum, is duly licensed by the Fort Peck Tribal Courts as a Lay Counselor at Law, and is the twin brother of Clayton Reum. Leighton represented the appellant in the Tribal Court and Clayton prosecuted this appeal.

. Archambeault represented the appellee throughout the Tribal Court proceedings, while Mary L. Zemyan, Esq., responds to this appeal on behalf of appellee.

.This information is garnered from a cover letter signed by Archambeault on December 10, 1999, which was attached to appellee’s Response to Petition for Review as "Exhibit 4". While no copies of the cover letter, the "slightly revised (order)”, or the certified mail receipt itself, appears in the Tribal Court file, Archambeault also submitted an "Exhibit 5”, which appears to be a photocopy of a USPS certified mail receipt signed by a ‘LaFon Copenhaver’, on behalf of the Tribal Court, on December 13, 1999.

. Sec. 307. Disqualification.
A justice or judge shall be disqualified in any proceeding in which his/her impartiality might reasonably be questioned, in which he/ she has any personal bias or prejudice concerning any party, in which he/she or a member of his/her immediate family might be a witness, has any interest, or has any personal knowledge of any disputed evidentiary facts concerning the proceeding, or has acted or is acting as a lawyer or lay counselor in the proceeding, or in which he/she might otherwise appear to be biased or prejudiced....